IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

KELSEY SAINT CLAIR,          )
                             )
        Plaintiff,           )          NO. 3:20-CV-00371
                             )
v.                           )          JUDGE RICHARDSON
                             )
WILLIAM ZINK,                )
                             )
        Defendant.           )
                             )

## <u>MEMORANDUM OPINION</u>

Pending before the Court is the motion for summary judgment (Doc. No. 60, "Saint Clair's Motion") filed by Plaintiff, Kelsey Saint Clair ("Saint Clair" or "Plaintiff"), which is supported by a statement of facts (Doc. No. 61, "Saint Clair's Facts"), and an accompanying memorandum of law (Doc. No. 62, "Saint Clair's Memorandum"). Defendant, William Zink, has filed a response in opposition (Doc. No. 67, "Zink's Response"), to which Saint Clair filed a reply (Doc. No. 71, "Saint Clair's Reply").

Also pending before the Court is the motion for summary judgment (Doc. No. 93 "Zink's Motion") filed Defendant, William Zink ("Zink" or "Defendant"), which is supported by a statement of facts (Doc. 95, "Zink's Facts") and an accompanying memorandum of law (Doc. No. 94. "Zink's Memorandum"). Saint Clair has filed a response in opposition (Doc. Nos. 96 and 97, "Saint Clair's Response"),[1] to which Zink filed a reply (Doc. No. 99, "Zink's Reply").

---

[1] Docket Nos. 96 and 97 appear to be the same filing by Saint Clair. The Court herein will refer only to Docket No. 96 as Saint Clair's response to Zink's Motion, and it will order Docket No. 97 to be stricken as duplicative.

For the reasons stated below, both Saint Clair's Motion and Zink's Motion will be DENIED.

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56 "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628.

A party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—must support the

assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the nonmoving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *New Century Found. v. Robertson*, 400 F. Supp. 3d 684, 689 (M.D. Tenn. 2019) (citing *Ferro Corp. v. Cookson Group, PLC*, 585 F.3d 946, 949 (6th Cir. 2009). "[S]ummary judgment in favor of either party is not proper if disputes remain as to material facts. . . . [T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). In addition, "if the moving party will bear the burden of persuasion at trial, then that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 843

(6th Cir. 1997) (citing *Celotex Corp.*, 477 U.S. at 322-23); *see also Ely v. Dearborn Heights School Dist. No. 7*, 150 F. Supp. 3d 842, 849-50 (E.D. Mich. 2015) (explaining that if the moving party bears the burden of proof at trial that party "must satisfy both the initial burden of production on the summary judgment motion—by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the claim—by showing that it would be entitled to a directed verdict at trial." (citing William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477–78 (1992))).

<u>DISCUSSION</u>

This matter was initiated via Saint Clair's complaint (Doc. No. 1, "Complaint"), wherein Saint Claire alleged that Zink refused to participate in a "mandatory mediation provision in the [below-described] Operating Agreement" and brought two causes of action (abuse of process and breach of contract). (*Id*. at 3-5). Before any responsive motion or pleading was filed (see Doc. No. 95 at ¶ 6), Saint Clair subsequently amended her Complaint (Doc. No. 6, "Amended Complaint).[2] Saint Clair now seeks summary judgment on both causes of action. (Doc. No. 62 at 3).

Zink also (cross) moves for summary judgment on both of those causes of action, arguing that (1) both of Saint Clair's causes of action are barred by the doctrine of res judicata and (2) the claim for breach of contract "is now barred by the compulsory-counterclaim rule." (Doc. No. 93 at 1-2). Before reviewing the arguments within Saint Clair's Motion and Zink's Motion respectively, the Court first will ascertain what facts are not in genuine dispute.

---

[2] In comparing the Amended Complaint to the Complaint, the Court sees no substantive differences therein; the only notable difference is cosmetic: case cites are hyperlinked in the Amended Complaint but not the Complaint. In any event, the Amended Complaint is the operative complaint.

Via his insufficient responses[3] (Doc. No. 68) to Saint Clair's Facts (Doc. No. 61), Zink is deemed to have admitted that all facts[4] asserted by Saint Clair are undisputed for purposes of summary judgment. Those facts, and Saint Clair's citations in support of them, are set forth below (albeit with references to the parties having been cleaned up to foster cohesiveness and uniformity)[5]:

---

[3] Zink's responses to Saint Clair's Facts fail to comply with the requirements of Local Rule 56.01(e). Under Local Rule 56.01(e), the party opposing a motion for summary judgment must respond to each statement of fact in the following way:

> (1) The response to the statement of undisputed material facts must contain individually numbered, concise, non-argumentative responses corresponding to each of the movant's numbered undisputed material facts by (A) agreeing that the fact is undisputed; (B) agreeing that the fact is undisputed for purposes of summary judgment only; or, (C) disputing the fact on any basis permitted by Fed. R. Civ. P. 56(c).

> (2) Each numbered response must start with "Undisputed," "Undisputed for Summary Judgment Purposes Only," or "Disputed".

> (3) If the respondent disputes a fact, the evidentiary citations supporting the respondent's position must be limited to evidence specific to that particular fact.

> (4) The respondent may state that a fact is not material, but stating that a fact is not material shall not excuse the respondent from stating whether the fact is disputed or undisputed.

> (5) Legal arguments, including as to materiality of any fact, must be made in the responding memorandum, not in the response to the statement of undisputed material facts.

L.R. 56.01(e)(1)-(5). To each of Saint Clair's Facts, Zink does not provide as required an appropriate response, such as "disputed" or "undisputed," but rather offers his entire case theory; the exact sort of legal argument that is impermissible as a response per Local Rule 56.01(e). Accordingly, the Court will treat any such response by Zink as failing to "properly address another party's assertion of fact," and accordingly will treat such asserted fact as undisputed for purposes of Saint Clair's Motion. *See* Fed. R. Civ. P. 56(e)(3) ("where a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it").

[4] That is not to say that Zink admits the *materiality* of all these facts; Zink expressly disputes (not in an inappropriate manner) the materiality of several of them.

[5] Moreover, when citing a document, the Court herein consistently cites the docket number of the document in this case along with the applicable page number within that document (as in "Doc. No. __ at __," as opposed to citing the PageID#), eschewing the differing citation formats used by the parties.

- **No. 1**: On April 17, 2017, Saint Clair and Zink entered into an Operating Agreement for a new Tennessee limited liability company, Warbirds, LLC. (Doc. No. 1 at 25, 31).

- **No. 2**: The Operating Agreement contained the following provision: 8.1 Mediation of Disputes: The parties hereto agree, prior to the initiation of litigation, to participate in a minimum of 6 hours of non-binding mediation. (Doc. No. 1 at 25, 30).

- **No. 3**: A dispute arose between the parties regarding the ownership and operation of Warbirds, LLC. (Doc. No. 26 at 1, ¶ 5).

- **No. 4**: On January 17, 2020, Zink filed his "Petition for Dissolution and to Distribute Assets" (the "Original Petition") against Saint Clair and Warbirds, LLC in Davidson County Chancery Court, in a case styled *William Zink v. Warbirds, LLC, Kelsey Saint Clair*, Chancery Court for Davidson County, Tennessee Civil Action No. 20-0084-I (the "State Lawsuit"). (Doc. No. 1 at 1, 7-14; Doc. No. 26 at 2).

- **No. 5**: Zink did not participate in a minimum of 6 hours of non-binding mediation prior to filing the Original Petition in the State Lawsuit. (Doc. No. 61-1 at ¶¶ 4, 5, 9, 17, & 22).

- **No. 6**: On April 24, 2020, Zink filed his verified "Amended Petition for Judicial Intervention" (the "Amended Petition"), in the State Lawsuit. (Doc. No. 1 at 15-23).

(Doc. No. 68).[6]

Via her responses (Doc. No. 98) to Zink's Facts (Doc. No. 95), Saint Clair, admits that various facts asserted by Zink are undisputed for purposes of summary judgment.[7] Those facts,

---

[6] Saint Clair's Fact Nos. 5 and 7 are identical, both in the factual assertion and record citation. Accordingly, the Court will treat them as one fact, and therefore, lists the factual assertion only once above.

 The Court notes that at times, the "State Lawsuit" is referred to herein as the "State Court case."

[7] That is not to say that Saint Clair admits the *materiality* of all of these facts; indeed, Saint Clair expressly disputes the materiality of several of them.

and Zink's citations in support of them, are set forth below (albeit with references to the parties having been cleaned up to foster cohesiveness and uniformity)[8]:

- **No. 1**: On January 17th, 2020, Zink filed Petition for Dissolution and to Distribute Assets in the Davidson County Chancery Court, Case No. 20-0084 I. (Doc. No. 95-1).

- **No. 2**: On April 20, 2020, Saint Clair filed Motion to Dismiss Petition asserting grounds that the case should be dismissed for failure to mediate. (Doc. No. 95-2).

- **No. 3**: On April 28th, 2020, Saint Clair filed Notice Striking Motion to Dismiss. (Doc. No. 95-3).

- **No. 5**: On May 1, 2020, Saint Clair filed the action before the Court. (Doc. No. 1).

- **No. 6**: Before an answer could be filed, Saint Clair amended her Complaint. (Doc. No. 6).

- **No. 8**: On March 10, 2023, the Court signed a "Joint Stipulation and Order of Dismissal" in the State Court case. (Doc. No. 95-4).

- **No. 10**: Saint Clair filed a counter-claim in the State Court case asserting three counts for relief including punitive damages and attorney's fees. (Doc. No. 95-5).

(Doc. No. 95). Altogether, the Court gathers that the following facts (and only the following facts) are viewed as material and are undisputed by the parties:[9]

On April 17, 2017, Saint Clair and Zink entered into an agreement ("Operating Agreement") to form a Tennessee limited liability company, named "Warbirds,

---

[8] Moreover, when citing a document, the Court herein consistently cites the docket number of the document in this case along with the applicable page number within that document (as in "Doc. No. __ at __," as opposed to citing the PageID#), eschewing the differing citation formats used by the parties.

[9] For purposes of summary judgment, what actually matters is not what facts are (or are not) "undisputed" but rather what facts are (or are not) in genuine dispute. It is possible for a fact to be disputed and yet not be in *genuine* dispute; a party does not raise a genuine dispute by presenting a disingenuous (or otherwise patently hollow) dispute. The facts stated here are called "undisputed" by the Court because, for the reasons set forth above, it is appropriate to treat them as entirely undisputed. To the extent that either party would now claim that(s)he intended to dispute any of these facts, such dispute would not in the view of the Court be genuine anyway. So although the Court herein uses the concise term "undisputed" for ease of reference, it does so intending that the term mean "not in genuine dispute."

LLC." The Operating Agreement contained a mediation provision that required Saint Clair and Zink to participate in a minimum of six (6) hours of non-binding mediation prior to the initiation of litigation.

Zink did not participate in a minimum of six hours of non-binding mediation prior to filing his State Court Petition. Rather on January 17, 2020, Zink filed a "Petition for Dissolution and to Distribute Assets" (the "State Court Petition") against Saint Clair and Warbirds, LLC, in Davidson County Chancery Court ("State Court") (*William Zink v. Warbirds, LLC, Kelsey Saint Clair*, Chancery Court for Davidson County, Tennessee Civil Action No. 20-0084-I (the "State Lawsuit")).

Saint Clair filed a motion to dismiss Zink's State Court Petition on April 20, 2020, on the grounds that Zink failed to mediate prior to filing his State Court Petition as required by the Operating Agreement. Four days later, Zink filed a verified "Amended Petition for Judicial Intervention" (the "State Court Amended Petition") in the State Lawsuit. Saint Clair then filed a notice striking her motion to dismiss.

On May 1, 2020, Saint Clair filed the instant action before this Court.

On March 3, 2022, Saint Clair filed a counter-petition in the State Lawsuit, wherein she brought three claims including: breach of fiduciary duty by Zink, judicial intervention and dissolution, and review of financial records and accounting.

On March 10, 2023, the State Court signed a "Joint Stipulation and Order of Dismissal" (herein "Joint Stipulation of Dismissal") in the State Lawsuit, which dissolved Warbirds, LLC, but did not adjudge or dismiss Saint Clair's causes of action in the instant matter.

(Doc. Nos. 68, 98).

## A.   *Saint Clair's Motion*

Saint Clair argues that she is entitled to summary judgment because the undisputed facts establish the elements of both of her causes of action (abuse of process and breach of contract). (Doc. No. 62 at 3-5). For the reasons laid out below, with respect to each cause of action, the Court does not find that—considering what material facts are and are not in dispute—a reasonable jury would *have* to find for Saint Clair, as would be required for Saint Clair to obtain summary judgment on that cause of action. Thus, Saint Clair's Motion will be **denied** in its entirety.

1. Abuse-of-Process Claim[10]

"Under Tennessee law, an action for abuse of process lies for the use of legal process to obtain a result that it was not intended to effect, for a wrongful purpose." *Wachter, Inc. v. Cabling Innovations, LLC*, No. 3:18-CV-00488, 2020 WL 620978, at *3 (M.D. Tenn. Feb. 10, 2020) (Richardson, J.) (quoting *Montpelier v. Moncier*, No. E201600246COAR3CV, 2017 WL 2378301, at *5 (Tenn. Ct. App. June 1, 2017)). "[A] plaintiff must allege that the defendant employed a specified legal process for a purpose for which it was not designed in order to compel a party to do something that it could not be compelled to do by the use of that process." *In re Prince*, 414 B.R. 285, 294 (Bankr. M.D. Tenn. 2009).

The Tennessee Supreme Court has provided a thorough explanation of the nature of an abuse-of-process claim:

> In its most basic sense… an action for abuse of process is intended to prevent parties from using litigation to pursue objectives other than those claimed in the suit, such as using a court's process as a weapon to compel [another party]…to take some action or refrain from it. It is the use of process to obtain this collateral goal—a result that the process itself was not intended to obtain—that is the very heart of this tort.

*Givens v. Milikin*, 75 S.W.3d 383, 400-401 (Tenn. 2002) (internal citations and quotation marks omitted). To state a claim for abuse of process, two elements must be alleged: (1) the existence of

---

[10] The sort of abuse of process at issue here is not to be confused with malicious prosecution, which has been referred to (by courts describing Tennessee law in this regard) as involving a "*malicious*" use (something not necessarily synonymous with "abuse") of process. *Bryant-Bruce v. Vanderbilt Univ., Inc.*, 974 F. Supp. 1127, 1145 (M.D. Tenn. 1997) ("There are two tort actions that may be brought to obtain redress for the alleged misuse of legal process by another: abuse of process and malicious prosecution. An action for abuse of process lies for the use of legal process to obtain a result it was not intended to effect, for a wrongful purpose. Malicious prosecution, or the malicious use of process, is the employment of legal process for its ostensible purpose, but without probable cause." (quoting *Donaldson v. Donaldson,* 557 S.W.2d 60, 62 (Tenn. 1977))). Consequently, "[m]ere initiation of a lawsuit, though accompanied by a malicious ulterior motive, is not abuse of process." *Reguli v. Woodruff*, No. 3:24-CV-00694, 2025 WL 949992, at *25 (M.D. Tenn. Mar. 28, 2025) (quoting *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. 1999)).

an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge. *Id.* at 400 (internal quotations omitted); *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.,* 986 S.W.2d 550, 555 (Tenn. 1999).

The mere filing or *maintenance of a lawsuit*—even for an improper purpose—is not a proper basis for an abuse-of process-action. *Bell ex rel. Snyder*, 986 S.W.2d at 555 (citing *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.,* 42 Cal.3d 1157, 232 Cal. Rptr. 567, 728 P.2d 1202, 1208 (1986)). *See also Batten v. Abrams,* 28 Wash. App. 737, 626 P.2d 984, 990 (1981) ("[T]here must be an act after filing suit using legal process empowered by that suit to accomplish an end not within the purview of the suit.") "'[T]he gist of [abuse of process] is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish.'" *Bell ex rel. Snyder*, 986 S.W.2d at 555 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 121, at 897 (5th ed. 1984)).

Even more, the lawful use of a court's process does not give rise to an abuse-of-process claim, even though it is accompanied with an incidental spiteful motive or awareness that the use of process will result in increased burdens and expenses to the other party.[11] *Givens*, 75 S.W.3d 401. However, a different case is presented when the *primary purpose* of using the court's process is for spite or other ulterior motive. *Id*. For example, where a party uses discovery tactics to harass and to expose another individual to excessive attorney's fees and legal expenses, rather than to

---

[11] For example, suppose a plaintiff files a suit for damages against a defendant and says to himself, "I really want to recover these damages and am entitled to them; if the defendant incurs substantial legal fees defending the suit, that's the defendant fault and the defendant's problem, and the defendant deserves it." That plaintiff does not have the ulterior motive required to commit abuse of process. But suppose a plaintiff files a suit for damages against a defendant and says to himself, "I care less about recovering these damages and more about causing the defendant to incurs substantial legal fees defending the suit." That plaintiff well might have the ulterior motive required to commit abuse of process.

reasonably advancing a party's legitimate interests in the ongoing litigation, the party's primary motive is an ulterior one. *Id.* at 402.

Here, Saint Clair argues that "[i]n choosing to file the litigation and develop it, rather than mediate the dispute, [] Zink willfully and/or intentionally misused the process issued by the [State Court], for some wrongful and/or unlawful objective or ulterior purpose not intended by the law to affect." (Doc. No. 62 at 4). Put another way, according to Saint Clair, Zink abused the process of the State Court by filing the State Lawsuit against Saint Clair—and forcing her to defend herself—rather than participate in a six-hour mediation as required by their Operating Agreement *prior* to initiating the State Lawsuit. (*Id*. at 5). True, the undisputed facts demonstrate that Zink filed a lawsuit without participating in a contractually required mediation beforehand. (Doc. No. 68 at ¶ 5). However, the undisputed facts do *not* necessarily establish—i.e., do not dictate that every reasonable jury would *have* to find—that Zink had an ulterior motive or that Zink used the State Court's process for some non-legitimate purpose.[12]

Indeed, there are no undisputed facts to suggest that Zink filed the State Lawsuit with the goal of doing anything more or other than to do what the State Lawsuit sought to do: dissolve Warbirds, LLC. (Doc. Nos. 68 at ¶ 4; 95 at ¶ 1). Nothing in the undisputed facts precludes a finding by a reasonable jury that Zink filed the State Lawsuit for a legitimate end, even if the factual background may suggest spite or awareness that filing the State Lawsuit would likely generate legal expenses for Saint Clair. Moreover, though the Court agrees in theory that filing a lawsuit despite having a contractual agreement to participate in mediation prior to filing a lawsuit seems improper in an objective sense, this is not enough to show that Zink's primary purpose of using the State Court's process was some ulterior motive. *Id*. Moreover, Saint Clair does not point to

---

[12] Zink points to his Additional Facts in support of showing there is a genuine dispute. (Doc. No. 67 at 18-19). As stated in a prior footnote, the Court cannot rely on Zink's Additional Facts.

anywhere in the record to show (let alone show conclusively) that Zink filed his State Lawsuit primarily not to obtain they specific relief sought therein, but instead to, for example, harass and to expose Saint Clair to legal expenses (including attorney's fees) beyond those she would have incurred had there been the required six hours of mediation. Moreover, merely because a party has had to incur additional legal expenses from the filing of a lawsuit does not mean that the filer has committed the trot of abuse of process.

In her Reply, Saint Clair proposes the parties chose mediation as their "process." (Doc. No. 71 at 3). Though creative, this argument is unpersuasive. Under Tennessee law, the term "process" appears to encompass all procedures incident to the litigation process, such as discovery proceedings, the noticing of depositions, and the issuing of subpoenas. *Givens*, 75 S.W.3d 402 ("we conclude that the plaintiff's complaint states a claim for abuse of process in the [ ] Firm's use of discovery subpoenas, depositions, and interrogatories). Thus, "process" does not include mediation that is done without court involvement—as here, where the parties were supposed to mediate per their own accord *prior* to initiating a lawsuit. And even if it did, that would not get Saint Clair anywhere. If mediation is "process," then Saint Claire's complaint is not that Zink *abused* that process, but rather that Zink did not use that process at all. Saint Clair provides no authority for the (counter-intuitive) proposition that *forgoing* of process can somehow amount to abuse of process.

With material facts still in dispute as to the first element of an abuse-of-process claim (i.e., the existence of an ulterior motive), a reasonable jury would not have to find that Saint Clair has established her abuse-of-process claim. Therefore, Saint Clair cannot show that she is entitled to summary judgment on her claim for abuse of process. Thus, Saint Clair's Motion will be **denied** as to the claim for abuse of process.

2. <u>Breach-of-Contract Claim</u>

Although a claim for breach of contract is more on target, it is still unavailing to Saint Clair, because she has made no conclusive showing that she suffered actual damages as a result of Zink's failure to participate in mediation prior to filing the State Lawsuit. To establish a breach-of-contract claim, a plaintiff must prove: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc*., 579 S.W.3d 8, 25 (Tenn. Ct. App. 2019) (quoting *ARC LifeMed, Inc. v. AMC–Tennessee, Inc*., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

Determining whether there has been a breach requires interpretation of the contract (assuming that an enforceable one even exists). "A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009). "Courts must look at the plain meaning of the words in a contract to determine the parties' intent. If the contractual language is clear and unambiguous, the literal meaning controls; however, if the words are ambiguous, i.e., susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language." *Id.* (internal citation omitted). "When the language of the contract is plain and unambiguous, courts determine the intentions of the parties from the four corners of the contract, interpreting and enforcing it as written." *Union Realty Co. v. Family Dollar Stores of Tennessee, Inc.*, 255 S.W.3d 586, 591 (Tenn. Ct. App. 2007). The Tennessee Court of Appeals has explained that:

> The rights and obligations of contracting parties are governed by their written agreements. The courts must interpret these contracts as written. We are not at liberty to make a new contract for parties who have spoken for themselves, nor are we at liberty to relieve parties from their contractual obligations simply because these obligations later prove to be burdensome or unwise.

*Hillsboro Plaza Enterprises v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993) (internal citations omitted).[13]

However, "[w]hen contractual language is found to be ambiguous, the court must apply established rules of construction to determine the intent of the parties." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). "We generally will construe ambiguous terms against the drafter. However, the courts will not rewrite an unambiguous term simply to avoid harsh results." *Ralph v. Pipkin*, 183 S.W.3d 362, 367 (Tenn. Ct. App. 2005) (internal citation omitted). The Tennessee Supreme Court has explained the circumstances under which a court *should* find a contractual provision to be ambiguous:

> "Ambiguity…does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions. A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001) (internal quotation marks and citations omitted). The court will not use a strained construction of the language

---

[13] The Court notes that in citing cases herein to identify or explain its view as to what Tennessee law is on a particular topic or issue, the Court is mindful of the so-called *Erie* doctrine, whereby the Court should not necessarily accept that a court's prior statement of Tennessee law accurately reflects current Tennessee law.

The *Erie* doctrine was announced in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). "Under the *Erie* doctrine, a federal court sitting in diversity applies 'the substantive law of the forum state and federal procedural law.'" *Bonasera v. New River Elec. Corp.*, 518 F. Supp. 3d 1136, 1151 (S.D. Ohio 2021) (quoting *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)).

The Sixth Circuit has explained:

> In diversity cases such as this, [the *Erie* doctrine requires that] we apply state law in accordance with the controlling decisions of the state supreme court. If the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data. "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the [state] Supreme Court would decide otherwise."

*Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) (citations and footnote omitted) (quoting *Kingsley Assoc. v. Moll PlastiCrafters, Inc.,* 65 F.3d 498, 507 (6th Cir.1995)). Herein, when the Court cites a decision of the Tennessee Court of Appeals (or for that matter of a federal court) as authority for what Tennessee law is on the point for which the case is cited, the Court does so with confidence that the Tennessee Supreme Court today would not decide differently on that point.

to find an ambiguity where none exists. *Farmers–Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

*Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008).

Here, the parties do not dispute that the Operating Agreement is an enforceable contract or that the mediation provision of that contract unambiguously requires the parties, "prior to the initiation of litigation, to participate in a minimum of 6 hours of non-binding mediation." (Doc. No. 67 at ¶ 2). Moreover, Zink does not dispute that he failed to participate in a minimum of six hours of non-binding mediation prior to initiating the State Lawsuit. (*Id.* at ¶¶ 5, 7). Therefore, the Court is satisfied that a jury would have to find that Zink breached the Operating Agreement. However, a metaphorical fly in the ointment appears when the Court reaches the last element of Saint Clair's breach-of-contract claim: actual damages.

As Zink argues in his Response, as the Operating Agreement does not afford Saint Clair a remedy for damages, she has no claim for any sort of actual damages (e.g., attorney's fees, loss of profits) for Zink's failure to mediate. (Doc. No. 67 at 9). True, the Operating Agreement does not afford Saint Clair's a remedy for damages, but this is not the standard for whether she can be awarded damages for her breach-of-contract action. The objective in determining damages in a breach-of-contract action "is to compensate for damages actually incurred 'by placing the plaintiff in the position he would have occupied had the contract been fulfilled in accordance with its terms.'" *Safeco Ins. Co. v. City of White House, Tennessee*, 133 F. Supp. 2d 621, 630 (M.D. Tenn. 2000) (quoting *Grantham and Mann, Inc. v. American Safety Prods., Inc.*, 831 F.2d 596, 601 (6th Cir. 1987)). This Court has previously found it persuasive that other courts have held that no actual damages can be assessed for failure to mediate in accordance with a contractual provision. *Ervin v. Nashville Peace & Just. Ctr.*, 673 F. Supp. 2d 592, 612–13 (M.D. Tenn. 2009) (Echols, J.) (citing *Marland v. Safeway, Inc.*, 65 Fed. Appx. 442 (4th Cir. 2003) (unpublished); *Martin v. Howard*,

784 A.2d 291, 302 (R.I. 2001) ("the breach of an alleged agreement to mediate—even if it were in writing—fails to state a claim for which damage relief can be granted."); *Jones v. Garber*, 2000 WL 33259916 (Va. Cir. Ct. Apr. 21, 2000) (unpublished) ("Although the contract in this case does require mediation before litigation, there is no true remedy for a failure to mediate.")). The Court does not discern from these cases an absolute ban on breach-of-contract claims based on the defendant's failure to mediate in accordance with a contractual provision; the Court cannot conclude that such claims are improper *per se*. But what the Court *does* discern from them is that actual damages stemming from a failure to mediate—which for such a claim are required by the third element of a breach-of-contract claim under Tennessee law—are not to be presumed and typically cannot be proven.[14] And to attain summary judgment on her breach-of-contract claim, Saint Clair must show that a reasonable jury would *have* to find such damages in her case.

Saint Clair failed to plead any factual allegations in her Amended Complaint to plausibly suggest that she sustained actual damages from the failure to mediate.[15] Much more to the point

___

[14] This is not to say that a plaintiff can never show damages for failure to mediate. Rather, it is to say only that a *plaintiff must* make that showing and may have difficulty doing so. For example, as in this case, where the defendant fails to mediate per a written contract with the plaintiff, the plaintiff would have to show what quantifiable damages were incurred that he or she would not otherwise have incurred but for defendant's failure to mediate. A common form of damages in that example would be legal fees. Can the plaintiff show with certainty—and undisputably for purposes of summary judgment—that he or she incurred more legal fees than he or she would have otherwise incurred because the defendant failed to participate in mediation? What if the parties in this case in particular participated in the mediation, but it failed, and the parties had to proceed in litigating their dispute? This could create *more* legal fees (i.e., by generating fees associated with the mediation, without a corresponding reduction in fees associated with the ensuing lawsuit), than would have accrued had there been solely a lawsuit without the preceding mediation.

[15] True, Saint Clair seeks monetary damages for Zink's failure to mediate pursuant to the Operating Agreement. (Doc. No. 6 at 5). The Court imagines that Saint Clair incurred expenses in having to defend herself against Zink's State Lawsuit; however, this is not pled, and the Court is prohibited from fabricating factual allegations or relying on information not specifically pled by Saint Clair in the Amended Complaint. And more to the point, as suggested in a footnote above, merely because Saint Clair incurred *expenses* in *defending the State Lawsuit* does not mean that she sustained *damages* from Zink *not mediating*.

(because the instant motion is a plaintiff's motion for summary judgment rather than a defendant's motion to dismiss under Rule 12(b)(6)), Saint Clair has presented no evidence that she suffered actual damages, or even a dispute as to whether she suffered actual damages. Without more, the Court cannot conclude that a jury would be *required* to find actual damages arising from Zink's failure to mediate.

Therefore, the Court will **deny** Saint Clair's Motion as to her claim for breach of contract.[16]

## B.    *Zink's Motion*

Zink moves for summary judgment, arguing mainly that Saint Clair's causes of action are barred under the doctrine of res judicata based on the conclusion of the State Lawsuit.[17] (Doc. No.

---

[16] Via his Response, Zink raises two equitable defenses: waiver and unclean hands. (Doc. No. 67 at 20-26). Given that Saint Clair's Motion will be denied in its entirety, and neither party has requested that the validity (or lack thereof) these defenses be adjudicated as a matter of law at the summary judgment stage, the Court declines to rule on Zink's equitable defenses at this time.

[17] Zink argues, ostensibly as an argument separate from his res judicata argument, that Saint Clair's claim for breach of contract should have been brought in the State Lawsuit, under Tennessee Rule of Civil Procedure 13.01, and "is now barred by the compulsory counterclaim rule." (Doc. No. 94 at 10). "The purpose of the compulsory counterclaim rule is to insure [sic] that only one judicial proceeding be required to settle all those matters determinable by the same facts or law, that is, to bring all logically related claims into a single litigation, thereby avoiding multiplicity of suits." *Quelette v. Whittemore*, 627 S.W.2d 681, 682 (Tenn. Ct. App. 1981). "[I]f a party fails to file a counterclaim, other than those excluded by the Rule [13.01] itself, in response to a pleading in accordance with Rule 13.01 *and the controversy results in a final judgment*, then that party would be precluded from filing suit on that claim." *Crain v. CRST Van Expedited, Inc.*, 360 S.W.3d 374, 379 (Tenn. Ct. App. 2011) (emphasis added).

Put another way, Tennessee Rule of Civil Procedure 13.01 prescribes a rule for when a party must bring a counterclaim; however, it does not itself prescribes any particular consequence for failing to file a counterclaim required by the tule. In particular, Tennessee Rule of Civil Procedure 13.01 does not state that a consequence is that the counterclaim that was not brought as required as thereafter barred; instead, that consequence arises, if at all, by operation of res judicata. *Ball v. Larsen-Ball*, No. 3:18-CV-307, 2021 WL 12096672, at *2 (E.D. Tenn. July 30, 2021) ("[T]he result that a compulsory counterclaim is barred if not asserted as required by the rule is not spelled out in the rule itself. However, this result is well established by the cases somewhere on a theory of res judicata . . . ." (quoting *Carnation Co. v. T.U. Parks Const. Co.*, 816 F.2d 1099, 1103 (6th Cir. 1987))). Accordingly, the proper analysis is whether claims required by Tennessee Rule of Civil Procedure 13.01 to have been asserted as counterclaims in the first proceeding are now barred by res judicata. Accordingly, Zink's two arguments in the Zink Motion, though purportedly distinct from one another, actually are one and the same. Res judicata, as the doctrine that would actually determine whether Saint Clair's claims are barred, is the more applicable argument here.

93 at 1-2). To obtain summary judgment based on res judicata, Zink must show based on undisputed facts that Saint Clair's claims are precluded as a matter of law. Fed. R. Civ. P. 56(a). And the law at issue is *Tennessee*, not federal, law regarding res judicata. *See Livingston v. Jay Livingston Music, Inc.*, 142 F.4th 433, 440 (6th Cir. 2025) (" As a federal court, we respectfully give state court judgments the same preclusive effect they would receive under state law.")

It is important to note that the defense of res judicata is a matter for the Court (i.e., not for the jury). *See JP Morgan Chase Bank, N.A. v. Winget*, No. 08-13845, 2013 WL 4482961, at *2 (E.D. Mich. Aug. 21, 2013), *aff'd sub nom. JPMorgan Chase Bank, N.A. v. Winget*, 602 F. App'x 246 (6th Cir. 2015); *see Knox Cnty. Educ. Ass'n v. Knox Cnty. Bd. of Educ.*, 158 F.3d 361, 370 (6th Cir. 1998) (res judicata is a legal question under federal law); *see also* Fed. R. Civ. P. 56(a) (contemplating summary judgment on defenses, or parts of defenses). So whether Zink has made the required showing is a question for the Court rather than a jury. *See Strickland v. City of Markham*, No. 1:22-CV-01419, 2024 WL 4818719, at *4-7 (N.D. Ill. Nov. 18, 2024) (deciding whether to grant, and granting, summary judgment based on res judicata based solely on its own perspective, without addressing what a reasonable jury might say about the applicability of res judicata). This means that at the summary judgment stage, the Court's job is to make its *own*

---

And even if the compulsory-counterclaim rule were properly viewed as providing (when applicable) a basis for barring a claim that is distinguishable from res judicata, that would not help Zink, because the compulsory counterclaim rule is inapplicable because Saint Clair's claims herein were not compulsory counterclaims in the State Lawsuit. Tennessee Rule of Civil Procedure 13.01 provides that "[a] *pleading* shall state as a counterclaim any claim, other than a tort claim, which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim…" Tenn. R. Civ. P. 13.01 (emphasis added). Saint Clair never filed a pleading in the State Lawsuit; she filed a motion to dismiss. (Doc. No. 98 at ¶ 2). It is well-settled in Tennessee that a motion to dismiss is not a responsive pleading." *Just. v. Nordquist*, No. E202001152COAR3CV, 2021 WL 2661008, at *3 (Tenn. Ct. App. June 29, 2021) (quoting *Mosley v. State*, 475 S.W.3d 767, 774 (Tenn. Ct. App. 2015) (citations omitted)). Saint Clair filed a motion to dismiss—which is not a pleading—and was under no legal obligation to assert a counterclaim of any kind in her motion to dismiss.

Therefore, Saint Clair's claim for breach of contract is not barred under res judicata for failing to assert that claim as a counterclaim in the State Lawsuit.

finding on that question, without asking what a *reasonable jury* could or must find on that question. So, Zink is correct insofar as he indicates that if (in the view of the Court) the undisputed facts establish as a matter of law the applicability of res judicata to a claim of Saint Clair's claims, the Court should grant him summary judgment on that claim.

"Res judicata applies when there is: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Askew v. Davidson Cnty. Sheriff's Off.*, No. 3:19-CV-00629, 2020 WL 587424, at *3 (M.D. Tenn. Feb. 6, 2020) (Richardson, J.) (citing *Clemons v. Ohio Bureau of Workers' Comp.*, No. 17-4092, 2018 WL 1845871, at *1 (6th Cir. Mar. 8, 2018) (quoting *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009)). *See also Reid v. Rooms To Go Tennessee Corp.*, No. 3:16-2782, 2017 WL 2989190, at *3 (M.D. Tenn. Mar. 14, 2017), *report and recommendation adopted*, No. 3:16-CV-02782, 2017 WL 4310115 (M.D. Tenn. Sept. 28, 2017) (finding that the plaintiff was "essentially attempting to relitigate the matters that were litigated to finality in state court. As such, they are barred by the doctrine of res judicata.") "The purpose of res judicata is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources." *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981).

Although Zink does not specify the type of preclusion he asserts here when invoking "res judicata," it seems apparent to the Court, by Zink's request to have Saint Clair's *claims* barred, that his argument centers on claim preclusion. "Under claim preclusion, a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated and as to every theory of recovery that could have been

presented." *Funk-Vaughn v. Rutherford Cnty.*, No. 3:18-cv-01311, 2019 WL 4727642, at *2 (M.D. Tenn. Sept. 27, 2019) (quoting *Taylor v. U.S. Gov't*, 21 F. App'x 264, 265 (6th Cir. 2001)). Put another way that distinguishes the rule, "the doctrine of res judicata, also referred to as claim preclusion, bars a second suit between the same parties or their privies on the same cause of action with respect to all *issues* which were or could have been litigated in the former suit." *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009).

Zink argues that Saint Clair's claims here are barred under the doctrine of res judicata (more specifically, claim preclusion) because a "consent judgment" operates as res judicata to the same extent as a judgment on the merits. (Doc. No. 94 at 5) (quoting *Gerber v. Holcomb*, 219 S.W.3d 914, 916 (Tenn. Ct. App. 2006)).[18] The Tennessee Supreme Court has continued to follow the "decisive test" laid out in *Garrett v. Corry Foam Prods., Inc.*, 596 S.W.2d 808 (Tenn. 1980), whereby a judgment of dismissal gives rise to res judicata when "the judgment of dismissal was on the merits." *Calaway ex rel. Calaway v. Schucker*, 395 F. App'x 251, 257 (6th Cir. 2010) (citing *Garrett v. Corry Foam Prods., Inc.*, 596 S.W.2d 808, 810 (Tenn. 1980) (quoting *Long v. Kirby-*

---

[18] Unfortunately for Zink, *Gerber* does not control the present case, for two reasons. First, to satisfy the first element of res judicata, there must have been a prior adjudication on the merits, as there was in *Gerber*. It is not enough merely that the prior case was concluded by something called a "consent judgment," because the consent judgment must constitute an adjudication on the merits.

To the extent that *Gerber* suggests otherwise, the Court declines to follow it because it would conflict with *Garrett*, and the Court follows *Garrett*. The Court "must follow the decisions of the state's highest court when that court has addressed the relevant issue . . ." *See Calaway*, 395 F. App'x at 257 (quoting *Savedoff v. Access Group, Inc*., 524 F.3d 754, 762 (6th Cir. 2008) (internal quotation marks and citation omitted)). *See also Mac'Kie v. Wal-Mart Stores, Inc*., 127 F.3d 1102 (6th Cir. 1997) ("Under the *Erie* doctrine, 'a federal court deciding a diversity case under state law must apply the law of the state's highest.'") (quoting *Ray Indus., Inc. v. Liberty Mut. Ins. Co*., 974 F.2d 754, 758 (6th Cir. 1992) (rejected on other grounds by *Anderson Dev. Co. v. Travelers Indem. Co*., 49 F.3d 1128, 1131 (6th Cir. 1995)). So, the Court must decline to apply "the decision [in *Gerber* if it] would conflict with the Tennessee Supreme Court's ruling in *Garrett* . . . .". *See Calaway*, 395 F. App'x at 257.

Second, to the extent that *Gerber* is a case specifically about the effect of "consent judgments in particular," it is inapplicable in the present case because there is no indication that the State Lawsuit was resolved by a "consent judgment"—in fact, Zink's Motion is the only place where the "Joint Stipulation and Order of Dismissal" entered by the State Court is referred to as a "consent judgement."

*Smith*, 292 S.W.2d 216, 221 (1956)). *See also Elvis Presley Enters., Inc. v. City of Memphis*, 620 S.W.3d 318, 325 (Tenn. 2021) (collecting cases that demonstrate that that ultimate determination is whether the court's order was on the merits).[19]

> Whether a judgment of dismissal was on the merits turns on the intent of the parties:

> The extent to which a judgment or decree entered by consent is conclusive in a subsequent action should be governed by the intention of the parties as expressed in the agreement which is the basis of the judgment and gathered from all the circumstances, rather than by a mechanical application of the general rules governing the scope of estoppel by judgment.

*Long*, 292 S.W.2d at 220; *see also Agrolinz, Inc. v. Micro Flo Co*., 202 F.3d 858, 861 (6th Cir. 2000) (quoting *Long*, 292 S.W.2d at 220); *Lindsay v. Allen*, 82 S.W. 171, 174 (1904) ("In some States, a dismissal by agreement is regarded as a bar to a subsequent suit on the same issues. [B]ut the better rule is that it must be affirmatively shown either that the dismissal or nonsuit was upon examination of the merits, or that the intention of the parties was to finally settle the controversy by the agreement, or to merge the cause of action in the judgment . . . . " (quotation marks and citations omitted)). Thus, under Tennessee law, a voluntary dismissal by consent of the parties may satisfy the first element of res judicata, but only to the extent that the parties intended the dismissal to resolve the merits of the claim and establish res judicata. *See Garrett*, 596 S.W.2d at 809 ("The subject order, in itself, and the remainder of the court record in which that order was entered

---

[19] *See Regions Fin. Corp. v. Marsh USA, Inc*., 310 S.W.3d 382, 402 (Tenn. Ct. App. 2009) (determining that the entry of summary judgment in the federal court was an adjudication on the merits, explaining that a motion for summary judgment "goes directly to the merits of the litigation." (quoting *Anderson v. Rayner*, No. W2004-00485-COA-R3-CV, 2005 WL 3543682, at *6 (Tenn. Ct. App. Dec. 28, 2005)); *Creech v. Addington*, 281 S.W.3d 363, 378 (Tenn. 2009) (order of dismissal was an adjudication on the merits); *Gerber v. Holcomb*, 219 S.W.3d 914, 918 (Tenn. Ct. App. 2006) (consent judgment operated as an adjudication on the merits); *Snyder v. Yonkers Pub. Sch. Dist*., 315 F.Supp.2d 499, 502 (S.D.N.Y. 2004) (dismissal with prejudice for failure to comply with discovery orders was a judgment on the merits); *SupplyOne, Inc. v. Triad Packaging, Inc*., No. 13-3811, 2014 WL 3676524, at *4 (E.D. Pa. July 24, 2014) (whether there was a final judgment on the merits in a prior suit was not disputed).

demonstrate that it was not a determination of the plaintiff's right of action on the merits, unless the words 'with prejudice' can be held to have that effect.").

including:

Whereas, the Parties desire to enter into a Settlement Agreement in order to provide for certain payment in settlement and discharge of all claims, other than as provided herein, which are or were, or might have been, the subject matter of the Chancery Court action, Docket No. 20-0084-1, upon the terms and conditions set forth below. *The only claims between the parties that are **not** resolved and released between the parties are contained in the action styled as <u>Kelsey St. Clair v. Zink</u>, the causes of action for Abuse of Process and Breach of Contract*, presently at issue in the United States District Court for the Middle District of Tennessee, at Nashville, civil Action number, 3:20-cv-037.

(Doc. No. 95-4 at 5) (emphasis added).

Thus, Zink simply cannot show the first element of res judicata as it is stated above, because the record does not reflect that there was final decision on the merits in the State Lawsuit. For this reason, the Court will **deny** Zink's Motion in its entirety.

<u>CONCLUSION</u>

For the reasons stated herein, the Court will **DENY** both Saint Clair's Motion (Doc. No. 60) and Zink's Motion (Doc. No. 93) in their entirety. An appropriate corresponding order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE